IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ELLEN KLEINER & YURI KLEINER, Plaintiffs, v. JOHNSON & JOHNSON et al., Defendants. | CIVIL ACTION NO. 21-3366 |
|---|---|

**MEMORANDUM RE: MOTION TO REMAND**

**J.Baylson**                                                                                                                **August 6, 2021**

### I.      Introduction

After removal from state court, the parties agree on one thing — neither wants to stay in this Eastern District of Pennsylvania courthouse. We are a waystation for counsel and parties, whose principal strategy is to get out of here and go somewhere else. Nothing personal, I hope.

Invoking operatic metaphor about "travelling through" before turning to the facts, Schoenberg's <u>Moses and Aaron</u> tracks the Israelis as they move from Egypt to the Holy Land. Wagner's <u>The Ring of the Nibelung</u> follows Wotan and his followers in their efforts to reach Valhalla; Wagner's <u>The Flying Dutchman</u> tells the tale of a traveling sea captain cursed to sail the seas for seven years before touching land. In many operas capturing Greek mythology, Orpheus must pass through the underworld to find and rescue his lost Eurydice, leading to the famous moral, "don't look back."

Plaintiffs want to go back to state court. Johnson & Johnson wants this case to join an MDL in Trenton, so where do these travel requests leave us?

Plaintiffs initiated this lawsuit in the Philadelphia Court of Common Pleas in August 2017 against two Rite Aid entities, two Johnson & Johnson entities ("J&J"), and two other co-defendants (both of whom were dismissed by 2019). The Rite Aid entities reside in

1

Pennsylvania (as do Plaintiffs), and their continued presence in this case precluded the non-Pennsylvania J&J defendants from seeking removal to federal court. But then Plaintiffs voluntarily dismissed their claims against Rite Aid <u>the night before jury selection</u> was set to begin for the state court's trial. J&J immediately removed this case from state court to federal court, arguing that (1) diversity jurisdiction now exists and (2) Plaintiffs' bad faith assertion of claims against Rite Aid prevented them from doing so earlier.

Plaintiffs have moved to remand this case back to state court. Despite the now-present diversity of citizenship, the Court will **GRANT** Plaintiffs' Motion to Remand this case to the Court of Common Pleas of Philadelphia.

## II.   Background

As a concise procedural history, the case was filed in the Philadelphia Court of Common Pleas in 2017. Plaintiffs allege that they bought J&J's baby powder product from Rite Aid stores, and the product caused ovarian cancer. Extensive discovery ensued, including Plaintiffs taking discovery from Rite Aid and vice versa.

At two points during the pretrial proceedings, J&J removed the case to federal court. In both those instances, a motion to remand was granted. See <u>Kleiner v. Rite Aid Corp.</u>, No. 17-3975, 2017 WL 4765329 (E.D. Pa. Oct. 20, 2017) (Pratter, J.) (granting remand where J&J failed to demonstrate that Rite Aid was fraudulently joined); <u>Kleiner v. Rite Aid Corp.</u>, 604 B.R. 1 (E.D. Pa. 2019) (Kearney, J.) (granting remand because present litigation was not "related to" a pending bankruptcy matter in federal court).

Because of COVID-19, a jury trial — initially expected to begin in mid-2020 — was delayed, along with thousands of other proposed civil jury trials throughout the United States. Anticipating increased availability for vaccines, the parties agreed to a trial plan in January 2021,

which would permit a five-week trial in August 2021. The state court held a settlement conference around this period, which proved unsuccessful. Plaintiffs continued to prepare for trial against both Rite Aid and J&J.[1]

As the trial date neared, jury selection was scheduled to take place on July 29, 2021. Several events happened in rapid succession. Discussions took place between Plaintiffs' counsel and counsel for J&J's co-defendant, Rite Aid, concerning whether Rite Aid would be interested in entering into a settlement agreement with Plaintiffs. Rite Aid's counsel replied, consistent with other settlement inquiries, that Rite Aid was not interested in paying any money to settle the case. Plaintiffs' counsel nonetheless made a demand, but Rite Aid did not budge. After some fairly routine negotiating phone calls, with Rite Aid consistently refusing to pay any money to settle the case, Plaintiffs' counsel advised Rite Aid counsel that Plaintiffs were going to drop Rite Aid as a defendant by entering a voluntarily dismissal. Plaintiffs' counsel prepared a stipulation to dismiss Rite Aid on the afternoon before jury selection was scheduled to begin. Within a short period of time, on July 28, 2021, counsel for Plaintiffs, Rite Aid, and J&J executed the Stipulation.

On July 29, 2021, the day after Plaintiffs dropped Rite Aid as a defendant, J&J filed a Notice of Removal to this Court (ECF 1). Plaintiffs then filed a "Emergency" Motion to Remand (ECF 29) on July 30, 2021, which J&J opposed (ECF 31). This Court had a recorded telephone conference with counsel on August 2, 2021, followed by a hearing on August 3, 2021, during which testimony was presented by counsel for Rite Aid, and counsel for Plaintiffs and J&J argued the present Motion to Remand.

---

[1] Plaintiffs' counsel informed this Court that, for example, they prepared lengthy jury questions for trial regarding Rite Aid's liability.

### III.     Legal Standard and Related Cases

The applicable statute in this instance requires defendants to remove a case with diversity jurisdiction to federal court within one year of the commencement of the action, unless they can show "that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c).

Although the Third Circuit has not examined the bad faith exception to § 1446(c), it has long held that "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Additionally, the standard for bad faith requires more than "mere negligence or bad judgment"; there must be "some motive of self-interest or ill will." Clapps v. State Farm Ins. Co., 447 F. Supp. 3d 293, 298 (E.D. Pa. 2020) (Jones, J.).

In the absence of more directly applicable precedential authority on § 1446(c)'s bad faith exception, a leading case on this statute is Judge Kenney's Bolus v. IAT Ins. Grp., No. 19-1712, 2019 WL 3001628 (E.D. Pa. July 9, 2019). In Bolus, the plaintiff sued IAT and a Pennsylvania business (Mount Pocono), preventing removal under diversity jurisdiction. A year-and-a-half after commencing the litigation, the plaintiff voluntarily dismissed Mount Pocono. Because § 1446(c)'s general one-year window for removal had expired, IAT sought to remove the case by arguing that plaintiff had acted in bad faith by keeping a non-diverse party in the case, based on IAT's arguments that the plaintiff was not actively litigating against Mount Pocono. Nonetheless, the Court declined to find that IAT "satif[ied] their heavy burden of persuasion" because the Court could conceive of a "reasonable basis" for plaintiff's actions. Id. at *4.

Similarly, in Judge Goldberg's Plaxe v. Fiegura, No. 17-1055, 2018 WL 2010025 (E.D. Pa. Apr. 27, 2018), the plaintiff was involved in a car accident that allegedly involved a defective

4

Chrysler component. The plaintiff and the non-diverse defendant reached an agreement to cap the non-diverse defendant's liability below his insurance maximum (effectively ensuring he would not have to pay any damages personally) but kept him in the case until after § 1446(c)'s one-year limit passed. Chrysler removed, contending "Plaintiff acted in bad faith by prolonging his claim against [the non-diverse defendant] until after the one-year deadline for removal had passed." Id. at *4. Judge Goldberg disagreed. Analyzing bad faith under the totality of circumstances and using circumstantial evidence of intent, Judge Goldberg found the plaintiff's explanation for his actions "plausible" and therefore it "d[id] not strongly suggest" bad faith. Id. at *5–6.

On the other hand, J&J has pointed to two cases in Texas in which the federal judge denied the plaintiffs' motions for remand after a finding of bad faith: Hoyt v. Lane Constr. Corp., No. 17-780, 2017 WL 4481168 (N.D. Tex. Oct. 5, 2017) and Lawson v. Parker Hannifin Corp., No. 13-923, 2014 WL 1158880 (N.D. Tex. Mar. 20, 2014). In Hoyt, the federal court found bad faith in plaintiffs' decision to nonsuit the non-diverse party "on the eve of trial" because the court disbelieved the plaintiffs' "strategic reasons for the last-minute filing of the nonsuit" when "plaintiffs knew months beforehand that the evidence would not support the claims against [the non-diverse defendant]." 2017 WL 4481168, at *2. In Lawson, the court also found "[s]ufficient evidence of forum manipulation" where the plaintiff "consistently failed to take steps to prosecute her claims against [the non-diverse defendant]" prior to non-suiting him. 2014 WL 1158880 at *6.

### IV. Analysis

From the testimony that was elicited at the hearing and the overall factual background, this Court cannot conclude that Plaintiffs acted with bad faith in their conduct leading up to the

dismissal of Defendant Rite Aid in state court.

The most important fact from the point of view of J&J, in opposing remand, is the fact that Plaintiffs communicated their decision to drop Rite Aid the evening before jury selection was scheduled to begin. Several cases have noted that a "last minute" dropping of a defendant whose presence in the case had prevented federal jurisdiction is substantive evidence of bad faith. See, e.g., Hoyt, 2017 WL 4481168, at *2. However, this Court finds that there is substantial other evidence that prevents a finding of bad faith here.

First, a distinction must be drawn between legitimate strategy in high-stakes litigation as opposed to bad faith. Plaintiffs may have had a legitimate strategy in pre-trial brinksmanship with Rite Aid — waiting for the pressure of trial to convince Rite Aid to pay to settle.[2] That this strategy did not ultimately succeed does not mean that it was undertaken in bad faith. Cf. Plaxe, 2018 WL 2010025, at *6 (no bad faith even where the plaintiff's delay "undermined" the otherwise-plausible defense strategy); Clapps, 447 F. Supp. 3d at 298 ("bad judgment" is not bad faith). Nor did Plaintiffs' decision to dismiss Rite Aid without monetary settlement necessarily indicate bad faith — Plaintiffs reasonably could have preferred to have only one defendant as the focus of the trial or wanted to avoid testimony on Rite Aid-related issues that could lead to harmful cross-examination.[3]

Second, and just as importantly, all of these situations took place in a tragic period of American history, the COVID-19 pandemic. For much of the past year-and-a-half, jury trials

---

[2] As the Court stated in the August 3, 2020 hearing, Plaintiffs' testimony that Ms. Kleiner bought J&J baby powder from Rite Aid stores would likely be sufficient to get her claims in front of a jury, despite the absence of corroborative documents and J&J's evidence that she bought it elsewhere. Indeed, the state court found that Plaintiffs had sufficient evidence to survive Rite Aid's motion for summary judgment, albeit without any explanatory opinion.

[3] J&J and Rite Aid have implied that they intended to impeach Plaintiffs extensively on their purchase habits, for example, which would be necessary to demonstrating Rite Aid's liability.

were essentially closed down in this Court, the Philadelphia Court of Common Pleas, and most other courts. The long-term delay in jury trials effectively ensured that settlement discussions or trial strategy simply took a back seat to finding a resolution of the pandemic and requiring lawyers to work on other matters than jury trials. Plaintiffs' delay in settlement discussions or in dismissing Rite Aid as a litigant may be significantly attributable to the COVID-19 pandemic.

Third, Plaintiffs' behavior throughout this litigation provides evidence that they were not simply pretending to litigate against Rite Aid; they were actively doing so. Plaintiffs sought discovery from Rite Aid, engaged in disputes with Rite Aid, opposed Rite Aid's motion for summary judgment (successfully), and even prepared jury questions regarding Rite Aid's liability. This behavior is not consistent with Lawson's finding that, there, the plaintiff's "consistently failed to take steps to prosecute her claims" against the non-diverse litigant.

Finally, another important factor here relates to the discussion at the hearing about the delay in trial, and what different considerations (strategic or otherwise) went towards entering into, accelerating, or delaying trial. This case was ready for trial in the Court of Common Pleas after four years of pretrial proceedings had been completed. By filing a motion for stay of proceedings in this Court (ECF 27), J&J candidly acknowledged that it intends to seek consolidation with pretrial proceedings in the District of New Jersey under 28 U.S.C. § 1407 if the case remained in this Court.[4] We must infer that J&J intended to delay trial of this case until the pretrial proceedings in New Jersey were completed, which could be several years, despite pre-trial proceedings in this case having reached completion. Plaintiffs' counsel likely preferred remaining in state court in large part to avoid these delays because Plaintiffs' case was trial-

---

[4] Of course, this Court has no say in whether the Judicial Panel in Multidistrict Litigation would grant consolidation this case. However, there is clearly some risk of consolidation of this case with the MDL pending in New Jersey.

ready. Thus, J&J's strategy to further delay this otherwise-ready trial provides a significant reason to grant the motion to remand.

With this background, the fact that Plaintiffs did not discuss dismissing Rite Aid until shortly before the start of jury selection is not sufficiently compelling evidence of bad faith. "While it was undoubtedly true that the plaintiff preferred to try the case in state court for tactical reasons, the circumstances of the case did not suggest blatant forum manipulation." Plaxe, 2018 WL 2010025, at *8 (quoting Medley v. Infantino, LLC, No. 12-3877, 2013 WL 857369, at *7 (E.D. Pa. Mar. 1, 2013) (Sanchez, J.)) (cleaned up). Unlike Hoyt, Plaintiffs had some evidence that would support their claims. And unlike Lawson, Plaintiffs did not fail to prosecute their case against Rite Aid.

The Court cannot fault Plaintiffs for preferring to keep this case out of federal court, and, based on the totality of circumstances here, J&J has not satisfied its heavy burden to show that Plaintiffs did so out of bad faith. Because "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand," Boyer, 913 F.3d at 111, remand to state court is proper here.

## V. Conclusion

Based on the previously discussed reasons given above, the Court will **GRANT** Plaintiffs' motion to remand and **DENY** as moot J&J's motion to stay. An appropriate order follows.

BY THE COURT:

/s/ MICHAEL M. BAYLSON
_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 21\21-3366 Kleiner v J&J\21cv3366 Memo re Remand.doc